# Commonwealth on Relation, Etc. v. Minor, Judge, Etc.

(Decided June 2, 1922.)

## Petition for Writ of Prohibition.

1. Prohibition—Nature and Grounds.—The writ of habeas corpus lies for the release or interference with the custody of a person, only, when he is illegally imprisoned, and not for the release or interference with the custody of one lawfully detained.

2. Prisons—Arrest of Paroled Convicts—Powers of Board of Charities.—Release of Prisoner on Habeas Corpus.—The statute authorizes the Board of Charities and Corrections, with the approval of the Governor, to issue a writ for and cause the arrest of a paroled convict, who has violated his parole, and the custody of the convict under such, not being illegal, it cannot be interfered with by a writ of habeas corpus, but, if the state of case is such, that the board was without authority to issue the writ, being void, the prisoner may be released upon a habeas corpus.

3. Habeas Corpus—Nature and Grounds.—The writ of habeas corpus is a discretionary writ, and should be issued only, upon a showing that a party is being illegally held, and if the petition for the writ shows, that the prisoner is in lawful custody, the writ should be denied.

4. Prisons—Rearrest of Paroled Convict.—A person found guilty of a felony and his punishment fixed by the judgment of the court at a term of imprisonment in the reformatory and is granted a parole therefrom, by the Board of Charities and Corrections, before the maximum term of his imprisonment has expired, and thereafter violates the terms and conditions of his parole, the parole becomes void, and the convict becomes as one, who has an unsatisfied judgment against him, and may be rearrested and required to serve the remainder of his term, although the date of his violation of the parole, is after his term of imprisonment would have expired, if he had remained in prison.

5. Prisons—Paroled Convict Not Entitled to Credit for Time he Was Out of Prison.—A judgment imposing a punishment by imprisonment can be executed, only, by actually serving in prison during the time adjudged, and a paroled convict upon his reincarceration in prison, because of violation of his parole, is not entitled to have credited upon his sentence, the period of time, he has been out of the prison on parole.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, and H. C. JACKSON for plaintiff.

JAY W. HARLAN, W. C. COOK and GEO. E. STONE for defendant.

Opinion of the Court by Chief Justice Hurt—Granting writ of prohibition.

Hyram Cowan was, on the 15th day of September, 1914, convicted of a violation of section 1166, Kentucky Statutes, and sentenced by the judgment to imprisonment in the Reformatory at Frankfort, Ky., for an indeterminate period of from one to five years, as was then provided by law. He was delivered to the custody of the Reformatory to undergo the sentence on October 8, 1914. On the 22nd day of October, 1915, he was granted a parole from the institution, by the then Board of Prison Commissioners, and since that time has been at large under the terms and conditions of the parole, until the first day of May, 1922, when he was arrested by virtue of a warrant issued by the Board of Charities and Corrections, which required that he be rearrested, returned and reincarcerated in the prison to serve the remainder of the term for which he was sentenced, and which he did not actually serve in prison before the parole. The reason for the revocation of the parole, and the order for his rearrest, was that he had violated the terms and conditions of the parole. The parole when granted was upon and subject to the conditions, provisions and limitations then provided by law, which authorized the granting of paroles to prisoners confined for such felonies, as that for which Cowan was convicted, and especially upon the conditions, that, if the prisoner should at any time violate the terms of the parole, or commit any act which under the laws is an offense, or if in the opinion of the Board the welfare of the prisoner or of society demanded, the Board should cause him to be rearrested and recommitted to the prison from which he was paroled or to a similar institution, under the control of the Board; and the further condition that he should at all times be under the control and supervision of and subject to the orders, rules and directions of the Board, and in the legal custody of the chief executive officer of the institution from which he was paroled. After the arrest of Cowan on the first day of May, 1922, under the warrant issued for him, with the approval of the Governor, by the Board of Charities and Corrections, and while he was being held upon such warrant, he made application to the judge of the county court to grant him a writ of *habeas corpus*, requiring his production before such judge, claiming that he was being illegally restrained of his liberties, and it appearing that

such judge, unless prevented, would assume jurisdiction to grant and hear the writ of *habeas corpus* and cause the prisoner to be discharged from custody, the Attorney General, as relator for the Commonwealth of Kentucky, instituted this action.

The defendant interposed a general demurrer to the petition, and the cause is submitted for final judgment upon the demurrer.

It will be observed that among the facts, admitted by the demurrer, are that Cowan was convicted of a felony and sentenced to imprisonment for an indeterminate term of from one to five years; but he actually served but a few days over one year of the term, and was then paroled; that there yet remains of the term to which he was sentenced a little less than four years, which he has not actually served in prison. The conviction was under section 1136, Kentucky Statutes, 1915, which was an act of 1914. The parole was granted under an act of 1914 which is section 3828, subsections 1 to 12, inclusive, of Kentucky Statutes, 1915. Under these statutes it was within the discretion of the Board of Penitentiary Commissioners to detain the convict in prison until the maximum time of his imprisonment should be reached, or it might parole him after he had served the minimum period of the sentence. Wilson v. Commonwealth, 141 Ky. 341; Board of Prison Commissioners v. Smith, 155 Ky. 425. The Board was without power, of course, to imprison him longer than the maximum period of his imprisonment, regardless of his conduct or previous history. Under subsections 2, 3, 4 and 8 of section 3828, Kentucky Statutes, 1915, a parole was granted only upon the application of the prisoner after he had served the minimum term of his sentence. After being paroled the prisoner was not required to wear anything, which indicated that he was under conviction for a crime, nor was he required to reside in the state or elsewhere, unless the place of his residence was a condition of the parole; he was free to come and go as he might choose, or engage in any remunerative, lawful occupation; he was given assistance by the board to find employment, if necessary; but he was required to make such written reports as might be required of him, by the rules of the board, to the chief executive officer of the prison from which he was paroled. The board, also, had in its employment two agents, whose duties it were to look after the paroled convicts and to as-

sist them, if necessary, in finding employment, and, if required by the board, to inspect and report upon the employment, habits and surroundings of the convicts, to give counsel, aid and encouragement to the convicts on parole, and to visit, and if necessary to interrogate and require the convicts to furnish them information touching their habits, surroundings and conduct as might be necessary to enable the agents to discharge their duties. Section 3828-7, Kentucky Statutes, provides: "Persons paroled under the provisions of this act shall at all times be under the control and supervision of and subject to the orders, rules and directions of the Board of Penitentiary Commissioners, and in the legal custody of the chief executive officer of the institution from which they were paroled." It is admitted by the demurrer that the provisions of the foregoing statute, as well as the duty of the convict, to make written reports to the chief executive officer of the prison, and to the employment agents, if necessary and required, and to refrain from committing any offense against the laws were conditions upon which the parole in the instant case was granted.

It is established beyond any question that a writ of *habeas corpus* can be made use of to release from or to interfere with the custody of a prisoner, only, when he is illegally held in custody. If the imprisonment is lawful, the prisoner cannot be released from custody by means of such a writ. Section 399, Criminal Code; Board of Prison Commissioners v. Crumbaugh, 161 Ky. 540. Hence, if the Board of Charities and Corrections, which is the successor to all the rights and powers of the Board of Penitentiary Commissioners, had authority to issue the writ by virtue of which Cowan was arrested and detained, the county judge cannot, upon the hearing of a writ of *habeas corpus,* go behind the writ of the board, nor interfere with the custody of the prisoner held under the writ. Section 3828, Ky. Statutes, 1915, subsections 1 and 2, and which are the same as section 3828-1 and 2 of Kentucky Statutes, expressly confers upon the Board of Charities and Corrections, as successors to the Board of Penitentiary Commissioners, the authority to issue a writ for the arrest of a paroled convict, who has violated his parole, and to reimprison him in satisfaction of the judgment of conviction and section 3828, subsections 6 and 9, Kentucky Statutes, makes it the duty of any peace officer, into whose hands it may come, to execute the writ and denounces a penalty upon him for his failure to do

so. This exact question was considered and determined by this court in Board of Prison Commissioners v. Crumbaugh, *supra,* and it was there held that the commissioners had authority to issue the writ and detention of a paroled convict by virtue of such a writ was legal, and could not be interfered with by writ of *habeas corpus;* but the facts of that case were probably different from the facts, in this case, in as much, as it does not appear from the opinion in that case, that the writ was issued for the rearrest of the convict after the time when the period of his sentence had expired, if he had not been paroled, as appears in this case. It is insisted, here, that the writ for the arrest of Cowan was not issued by the Board of Charities and Corrections until more than five years, the maximum of his sentence, had expired, counting from the date of his induction into prison under the judgment; that the legal effect of the terms and conditions under which he was on parole were such that he was really a prisoner while under parole and executing his sentence in a different way from that provided by the judgment, but having the same effect, and that when the maximum period of his imprisonment had been reached although out of prison and under parole, he had performed his sentence and therefore the board had no further power to imprison him under the judgment, and therefore the writ issued by it was void, and the detention illegal, and that he was entitled to be delivered from custody by a writ of *habeas corpus,* just as one would have such right who was imprisoned under a void judgment. The matter for decision thus presented, is whether when a convict has been paroled, and while out of prison under the parole, is he serving the sentence of the court, and is he entitled to have the time while he is under parole deducted from the period of his imprisonment, as imposed by the judgment of conviction. If while under the parole he is still a prisoner and serving the sentence imposed by the court, as a matter of course the Board of Charities and Corrections is not authorized to extend the period of his imprisonment beyond that imposed by the court, and hence was without authority to cause his arrest or detention.

The general rule with regard to punishment by imprisonment is thus stated in 8 R. C. L. 259 to be "where the penalty is imprisonment the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or some legal au-

thority.   Therefore the expiration of the time without imprisonment is in no sense an execution of the sentence.''   Section 1136, Kentucky Statutes, requires that ''persons sentenced to punishment by confinement in the penitentiary shall be kept at hard labor.''   This could have no other meaning than that while serving the sentence in the penitentiary the convict shall be kept at hard labor.   It will, furthermore, be observed that the judgment of the court requires the execution of the sentence to be by confinement at hard labor in the penitentiary, and if the Board of Prison Commissioners has the power to nullify the judgment of the court by permitting the convict to execute the judgment other than in the manner required by the judgment, it would be assuming to itself power to alter and set aside the judgment of the court, which authority it could have in no state of case.

Furthermore, if permitting a going at large upon a parole is executing a sentence of a court imposing punishment by confinement at hard labor in the Reformatory, such would necessarily be in contravention of section 77 of the Constitution, which empowers the Governor ''to remit fines and forfeitures, commute sentences, grant reprieves and pardons,'' and contrary to section 3828-10, Kentucky Statutes, which provides that nothing in the act authorizing paroles shall affect the prerogatives of the Governor, and it has been held that the power to grant a pardon, commute a sentence, or to remit a fine or forfeiture is exclusively the prerogative of the Governor.   To hold that being under parole executes a sentence of imprisonment would amount to a holding that the Board of Prison Commissioners has power to commute a sentence, since it would change the punishment adjudged by the court into a less severe one, and the board has no power to grant a pardon or commutation.   A commutation discharges a convict from some degree of his penalty and to that extent is a pardon, though partial.   In George, et al. Commissioners v. Lillard, 106 Ky. 820, it was distinctly held that upon the rearrest and imprisonment of a paroled convict, he could receive no credit upon the period of his adjudged imprisonment, by the period he was under parole, and the same view was expressed in Board of Prison Commissioners v. DeMoss, 157 Ky. 289.   In the former case, it was said with reference to the paroled convict, ''He is not exempt from the entire punishment which the law inflicts.''   In the latter case, certain language is made use of which it is insisted upholds the con-

tention that a convict while out on parole is executing the sentence of imprisonment, and that the board is not authorized to rearrest a paroled convict after the maximum period of his imprisonment, has been reached, from the time of his incarceration, under the judgment, but when it is considered that the question for decision in that case, was not the question here presented, but was whether a certain convict under a certain statute then in force was entitled to a parole and nothing further. The language used is not necessarily susceptible of the meaning attempted to be attributed to it, as it may be, without difficulty, consistently construed with the views herein expressed. The opinions in Board of Prison Commissioners v. Smith 155 Ky. 425, and Wilson v. Commonwealth, 141 Ky. 341, cited by defendant, as sustaining his contention, do not do so, as the question under consideration in the present case was not under consideration there, and the language of the opinions relied on by the defendant was used in holding that the power of the Board of Prison Commissioners were not such as to authorize them to nullify the judgment of the court, and that a judgment of conviction under the indeterminate sentence law, then in force, was not uncertain or indefinite, in that the board could not imprison the convict beyond the maximum limit fixed by the judgment of the court, but might parole him before that period was reached, and that the one uncertainty with regard to the punishment under the indeterminate sentence law, was the uncertainty regarding the conduct of the convict. The argument in the two cases combating the insistence that the power to parole was a nullification of the judgment of the court, successfully combats the contention that a convict is executing the sentence of the court while out under parole, and if a sentence is not being executed by the convict while under parole, it necessarily leaves the portion of the sentence, which he has not actually executed by confinement in prison, unsatisfied.

Section 3828-1, Kentucky Statutes, which is the same as that in force when the parole was granted, among other provisions, provides as follows:

"And said board shall have the further power and authority, with the approval of the Governor, whenever a paroled prisoner shall violate the terms of his parole, commit any offense against the laws, or when in the opinion of said board the welfare of said paroled prisoner or of society demands, to cause such paroled prisoner to

be rearrested and retaken and reconfined and kept in the institution from which he was paroled, or in some other institution under the control of said board, to which said board might have transferred said prisoner." Section 3828-3, *supra,* provides, among other things, that "and if he (paroled convict) shall fail to make such report or any other report required of him by the rules of said board, or if his conduct is reported as not good, the said failure to report or to properly conduct himself shall be deemed a violation of the conditions of his parole, and shall authorize his reimprisonment, provided the Governor approves the same."

The provisions of these sections do not limit the authority of the board to cause the arrest and imprisonment of a convict for a violation of his parole to any time, short of the period, when he shall have actually served his sentence to the extent of the maximum term adjudged by the court. In the endeavor to make of him a useful and law-abiding citizen, he has, by grace, been permitted to go free of the prison, upon the condition that he will conform to certain requirements prescribed, but, when he violates the terms and conditions of the parole granted him, the parole becomes void, and he remains a convict with an unexecuted sentence, except for the time, he was confined and he is in no better condition than a convict who has escaped from the prison before the expiration of his sentence, or who for some reason has a sentence imposed upon him, and upon which he has not yet been committed to prison, and the statute provides that it shall be the duty of the Board of Charities and Corrections, when a paroled convict has thus violated his parole and the parole has become void, to require him to execute the remaining portion of the judgment against him. Under the law the convict sought the parole, and it was granted to him only upon his request, and upon the faith of his agreement to comply with its conditions, and for that reason he cannot be heard to complain of restrictions, if any, which are imposed upon his freedom of action by the terms of the parole, while he was going at large under it. It can scarcely be insisted, as a matter of fact, that a convict who is out of prison, free to live at any place, unless the place of his residence is a condition of the parole, free to select and engage in any lawful remunerative employment and to receive the fruits of such employment and to dispose of same according to his own choice or inclination, but only under the requirements to report, if

required by the board, touching his employment, whereabouts and surroundings, and to submit to interrogation by the agents of the board upon the latter subjects, if they deem it necessary, is serving a sentence of imprisonment, when the law requires that persons sentenced to imprisonment by confinement in the penitentiary shall be kept at hard labor therein, and that such is the judgment of the court. The provisions of section 3828-7, Kentucky Statutes, providing that a paroled prisoner shall at all times be under the control and supervision and subject to the orders, rules and directions of the board, and in the legal custody of the chief executive officer of the institution from which he was paroled, do not, in reality, impose any restrictions upon the convict, further than have heretofore been adverted to and only insures the right of the board to assert authority to require the performance of the judgment. The statute which created the authority to grant paroles, as well as the statute under which Cowan was given an indeterminate sentence for his crime, were, indeed, enacted in an endeavor to uplift the convict and coax him, if possible, into a useful citizen, but they, also, had in view to some extent at least, the protection of society and the protection of those who have not been guilty of felonies, and it is not conceivable that the legislature intended, by these provisions, which are merely administrative, to enable a convict to escape the just punishments for his offense, and, also, to fail to conform his life to proper standards of citizenship. Such result would entirely defeat the purposes of the statutes, and if a convict who has at least shown his inclination to commit crimes by doing an act by which he receives imprisonment in the penitentiary, however outrageous it might be, could at the end of his minimum term secure a parole and then escape any further consequences of his conduct by conforming to habits of good citizenship, which it must be admitted is chiefly to his own advantage, until the time when his sentence would have expired, if he had remained in prison, and then return to his evil habits and conduct, the convict would have escaped, in large part, the punishment for his crime, and society would gain nothing for the grace and assistance extended to him. The conditions in the parole of Cowan were such as the legislature authorized the Board of Prison Commissioners to impose, and hence the question of whether it was authorized to impose the conditions need not be considered. Suffice it

to say, that as the granting of paroles is but a mere act of grace on the part of those administering the laws, and are granted by the request of the recipients, they are probably bound by any condition imposed, as the general principle is that a board having authority to grant paroles may impose any condition that is not unlawful, immoral or imposible of performance. The conditions upon which Cowan's parole was granted will be readily conceded to have been neither immoral, unlawful or impossible of performance. The same rule which applies to the granting of paroles, also, applies to granting a conditional pardon, and where a Governor who has granted a conditional pardon, and the condition was broken after the date upon which the convict's sentence would have expired had he remained in prison, it has oftentimes been held that the convict could be reimprisoned in satisfaction of the original judgment, and the time while he was at large under the conditional pardon should not be treated as a portion of the time served. While the courts in the different jurisdictions have not been in accord upon the question involved, here, the weight of authority and the best reason is, in our opinion, consistent with the conclusion at which we have arrived, and that is, that when a convict has been paroled, and has secured his release from a judgment of imprisonment upon certain conditions contained in the parole, or attaching to it by operation of law, and after the time when his sentence would have expired, if he had remained in prison and had not been paroled, he violates the conditions upon which he secured his freedom, the parole becomes void and the effect is that a portion of his sentence remains unexecuted, and he may be arrested and compelled to undergo so much of the original sentence as he had not served at the time of his release. The following adjudications, while rendered in many instances under statutes which were different somewhat from those in force in this jurisdiction, and in some instances upon different states of facts, we think in the main they support the conclusion which we have reached. State v. Barnes, 32 S. C. 14: Ex Parte McKinney, 64 Atl. 77; Huff v. Dyer, 4 Ohio C. C. 595; Ex Parte Hawkins, 61 Ark. 321; Adams v. State, 55 Fla. 1; State v. Smith, 19 Amer Dec. 679; Arthur v Craig, 30 Amer. Rep. 395; Lee v. Murphy, 12 Amer. Rep. 563; Re Convicts, 56 L. R. A. 658; State v. Horne, 7 L. R. A. (N. S.) 721; Alvarez v. State, 111 Amer. St. Rep. 102; 12 Cyc. 968; Fuller v. State, 122 Ala. 32; State v. Chancellor, 47

Amer. Dec. 557; Ex Parte Marks, 49 Amer. Rep. 684; Re Ridley, 26 L. R. A. (N. S.) 110.

This court will grant a writ of prohibition against an inferior jurisdiction when it is proceeding out of its jurisdiction, or proceeding irregularly within it, and there is no adequate remedy by appeal, or there is no remedy at all. I. C. R. R. Co. v. Rice, 154 Ky. 198; Rush v. Denhardt, 138 Ky. 238; Board of Prison Commissioners v. Crumbaugh, *supra.* A county judge has jurisdiction to issue a writ of *habeas corpus* under the circumstances, provided in section 399, Criminal Code, and may hear a response to such a writ as provided by section 416, Criminal Code, and we assume that in the instant case the facts are such as to give a county judge jurisdiction to issue and hear the writ of *habeas corpus.* The petition, however, states and the demurrer admits, that the petition for the writ of *habeas corpus* filed before the county judge shows that the petitioner is a paroled convict, who has been rearrested and detained, under a writ issued by the Board of Charities and Corrections for having violated his parole. It appearing from the application for the writ that the detention complained of is lawful and not illegal it would be erroneous for a county judge to issue a writ of *habeas corpus,* or under it to discharge the convict. In Bethuram v. Black, 11 Bush 628, it was held that the writ of *habeas corpus* was a discretionary writ, and should be issued only when probable cause for it is shown, and if upon the face of the petition therefor, it appears, that there was no sufficient grounds for release of a person in custody, the writ should be denied, There is no appeal from a judgment in a *habeas corpus* proceeding, and hence there is no remedy for erroneous proceedings under such a writ, and it is not difficult to understand how, if such a proceeding is permitted, the authority of the Board of Charities and Corrections would be much affected, if not destroyed. The remedy, where the Board of Charities and Corrections has exceeded or abused its authority, is to obtain a writ of mandamus or prohibition from the proper circuit court, from the judgment of which an appeal lies.

The temporary writ of prohibition is therefore made permanent, and the defendant is enjoined from issuing the writ or in any way interfering with the custody of the prisoner, through proceedings under such writ.