RENDERED: FEBRUARY 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0866-MR

BRIAN SMITH                                             APPELLANT

v.          APPEAL FROM FRANKLIN CIRCUIT COURT
            HONORABLE THOMAS D. WINGATE, JUDGE
            ACTION NO. 20-CI-00443

KENTUCKY PAROLE BOARD;
BRENDA BEERS-REINEKE,
MEMBER; BRIDGET SKAGGS-
BROWN, MEMBER; LADERIDRA N.
JONES, CHAIRPERSON; LARRY
BROCK, MEMBER; MELISSA
CHANDLER, MEMBER; PATTY
WININGER, MEMBER; ROBERT
POWERS, MEMBER; SHARON
HARDESTY, MEMBER; AND
SHERRI LYNN LATHAN, MEMBER                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, KAREM, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Brian Smith appeals from the Franklin Circuit Court's order granting summary judgment to the Kentucky Parole Board and its various members (collectively and singularly "the Board").  We affirm.

The essential facts appear to be uncontested.  In 1997, Smith was convicted of murder and sentenced to life imprisonment without the possibility of parole for twenty-five years.  Roughly twenty-five years later, the Board reviewed Smith's status but denied him parole and issued him a serve-out.  A *serve-out* is defined in the Board's administrative regulations as "a decision of the board that an inmate shall serve until the completion of his sentence."  501 Kentucky Administrative Regulations (KAR) 1:030 § 1(10).  Thus, in practical terms, the serve-out means that Smith will not receive parole review again and will likely spend the remainder of his life in prison.

After the Board denied his request for reconsideration, Smith filed this petition for declaration in the Franklin Circuit Court against the Board and its members,[1] arguing that the serve-out was impermissible.  Instead of an answer, the

---

[1] Though not raised by the parties, we are aware that many of the persons named as defendants in circuit court, and as Appellees in this Court, are no longer serving on the Board.  *See* https://justice.ky.gov/Boards-Commissions/paroleboard/Pages/members.aspx (last visited Jan. 25, 2023).  However, the change in the composition of the Board while this case has been pending does not materially impact this appeal.  *See* Kentucky Rule of Appellate Procedure (RAP) 8(E) ("When a public officer is a party in the officer's official capacity to an appeal or other proceeding in the appellate court and dies, resigns, or otherwise ceases to hold office, the action does not abate, and the successor is automatically substituted as party.").  Also, Smith did not raise any obvious individual claims against any current or former Board member.

Board filed a motion for summary judgment. Smith later filed his own motion for summary judgment. Smith also filed a motion to supplement his petition to argue that the Board had impermissibly rescinded a policy which had allowed inmates with life sentences who had been given serve-outs to parole review in ten years. It appears uncontested that the policy in question came into effect after Smith filed his complaint but was quickly rescinded in response to a restraining order issued by the Laurel Circuit Court in unrelated litigation.

Roughly nine months later, the trial court issued the order which gave rise to this appeal. The court concluded that the Board did not violate the separation of powers doctrine or otherwise err by issuing a serve-out to Smith. Thus, the court granted the Board's motion for summary judgment and denied Smith's competing motion. The court also denied Smith's motion to amend his petition, reasoning that any claims related to a directive which had already been repealed were inherently moot. Smith then filed this appeal.

The scope of our review is familiar. We must determine "whether the circuit court correctly found there were no issues of material fact and the moving party was entitled to judgment as a matter of law" as "[s]ummary judgment is only appropriate where the moving party shows the adverse party could not prevail under any circumstances." *Simmons v. Commonwealth*, 232 S.W.3d 531, 533-34 (Ky. App. 2007) (citations omitted).

As a prefatory note, we have examined the parties' briefs but will not address all of the sundry arguments therein. Instead, we shall address only those necessary to determine whether the trial court properly granted summary judgment to the Board. In so doing, we must interpret Smith's scattershot arguments – the haziness of which is illustrated by his assertion that they have been misconstrued by both the trial court and the Commonwealth.

Smith argues that the serve-out violates his purported liberty interest in continuing to receive parole consideration pursuant to Kentucky Revised Statutes (KRS) 532.030(1).[2] He also contends the serve-out improperly overrode the sentence imposed by the trial court. Although Smith uses some idiosyncratic phrasing, the gist of his arguments has been previously rejected.

"[T]here simply is no liberty interest in parole." *Phillips v. Commonwealth*, 382 S.W.3d 52, 55 (Ky. App. 2012). Nothing in the language of KRS 532.030 changes that foundational conclusion. Smith's reliance on the phrase in the statute that similarly situated inmates may not enjoy the "benefit of probation or parole" for twenty-five years is misplaced. Although the statute's usage of "benefit" is peculiar, the overall intention is clear: the "benefit" is that Smith became eligible for parole after serving twenty-five years. Period. The

---

[2] In relevant part, KRS 532.030(1) permits a person convicted of a capital offense to be sentenced to "a term of imprisonment for life without benefit of probation or parole until he has served a minimum of twenty-five (25) years of his sentence . . . ."

-4-

statute's stilted language does not entitle Smith to actually receive parole. *See, e.g.*, *Bartley v. Wright*, No. 2012-SC-000643-MR, 2013 WL 1188060, at \*2 (Ky. Mar. 21, 2013) ("Bartley was sentenced to life in prison. The qualification to that sentence – without the benefit of probation or parole for 25 years – simply means that he cannot receive the benefit before that time has passed. It does not mean that he automatically becomes entitled to parole upon the passage of that time."); *Dunn v. Commonwealth*, No. 2020-CA-1430-MR, 2022 WL 2898323, at \*2 (Ky. App. Jul. 22, 2022) (explaining that KRS 532.030(1) "is potentially misleading because the 'benefit' is *only* consideration of parole by the Board after twenty-five years have passed; the usage of the term 'benefit' in no way, shape, or manner guarantees that parole will ever be granted").[3]

The Board dutifully considered Smith for parole after he served about twenty-five years. Smith was not entitled to more.

We also reject Smith's related argument that the Board lacked the ability to give him a serve-out. To the contrary, it is plain that the Board may issue serve-outs to inmates with life sentences. *See, e.g.*, KRS 439.340(14)(b) (limiting deferments to a maximum of ten years, "except for life sentences"); 501 KAR

---

[3] Though *Bartley* and *Dunn* are both unpublished, the parties have not cited, nor have we independently located, published authority on this point. We deem each opinion to be a persuasive explanation of the language used in KRS 532.030(1). Thus, we cite each pursuant to RAP 41(A)(3).

1:030 § 3(2)(b) ("The board, at the initial or a subsequent review, may order a serve-out on a sentence.").

In fact, though Smith vehemently argues to the contrary, we have already rejected the core of his sundry arguments. Specifically, we held in *Simmons*, *supra*:

> Simmons's sentence has remained at a fixed term and parole eligibility is of no consequence. Again, parole is a privilege and not a right. It is considered on a case-by-case basis. The imposition of a serve-out is not punishment. It is merely a ruling by the Parole Board which is within its sound discretion. Requiring Simmons to serve out his life sentence does not make his punishment more onerous for crimes committed before the revised regulation was issued. The Parole Board's action was not arbitrary or capricious. Thus, there has been no violation of either the federal or state constitutions in any respect in this matter.

> Simmons's second contention is that by issuing the serve-out order, the Parole Board, as an administrative body of the executive branch of government, erroneously exercised power belonging to the legislative and judicial branches of government and thereby exceeded its authority . . . .

> It is well-recognized in Kentucky that the power to grant parole is purely an executive function. Thus, as we have previously held, the Parole Board was within the bounds of its discretionary powers in denying parole to Simmons's [sic] and ordering him to serve out the remainder of his sentence. We cannot say the Parole Board exceeded its authority. Further, we cannot hold the Parole Board invaded the functions reserved for the judicial or legislative branches of government.

*Simmons*, 232 S.W.3d at 534-35 (citations omitted).[4]

Our conclusion is not changed by former Justice Cunningham's concurring opinion in *Bartley*. Specifically, Justice Cunningham noted that our Supreme Court had not "determine[d] if the executive branch, through the Parole Board, has the authority to impose life sentences without parole upon persons that our legislature and courts have deemed eligible for parole." *Bartley*, 2013 WL 1188060, at *2. With due respect to Justice Cunningham, we first note that he only stated that our Supreme Court had not addressed the serve-out issue – he did not opine that assigning serve-outs to inmates like Smith was impermissible. Second, we addressed the issue in *Simmons*, and Justice Cunningham did not cite any contrary authority. Third, no other member of the Court joined Justice Cunningham's separate opinion and so it did not garner a majority. And fourth, *Bartley* is unpublished and thus is not binding precedent. *See* RAP 41(A). In short, Justice Cunningham's concurring opinion does not entitle Smith to relief.

Next, Smith argues the Board erred by rescinding the policy directive which had briefly allowed him to receive parole consideration in ten years. But the trial court declined to permit Smith to amend his petition to raise arguments based on the rescinded policy. Thus, the only question which is properly before us is

---

[4] We have denied relief many times to inmates with life sentences who received a serve-out. *See Dunn*, 2022 WL 2898323, at *4 n.3 (Ky. App. Jul. 22, 2022) (listing cases).

whether the trial court erred by denying Smith's motion to amend his petition – not the merits of the claims Smith wished to raise in the amended petition. *See, e.g.*, *Jackson v. Estate of Day*, 595 S.W.3d 117, 126 (Ky. 2020) (internal quotation marks and citation omitted) ("An appellate court is without authority to review issues not raised in or decided by the trial court.").

Generally speaking, a court may deny a motion to amend a pleading if the proposed amendments would be futile – *i.e.*, the amendments would fail to state viable claims upon which relief may be granted. *Insight Kentucky Partners II, L.P. v. Preferred Automotive Services, Inc.*, 514 S.W.3d 537, 555 (Ky. App. 2016). We may disturb a trial court's decision on a motion to amend a pleading only if the decision is an abuse of discretion. *Id.* Thus, though the merits of the amended petition are not squarely before us, we must discuss the viability of the proposed new claims to determine if the amended petition would have been futile.

We agree, of course, that a moot claim would be inherently futile. But we are puzzled by the trial court's conclusion that Smith's motion to amend his petition was moot. As we construe it, Smith wanted to contest the propriety of the Board's rescission of the directive which had briefly promised that Smith, and similarly situated inmates, would be considered for parole in ten years. In other words, Smith wanted to contest the rescission of the policy, not its contents. Accordingly, it is difficult to discern how Smith's complaint was rendered moot by

the rescission since the propriety of that act would have formed the basis of Smith's amended petition. Nonetheless, we affirm the denial of the motion to amend on alternate grounds. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

As we have discussed, the Board may give serve-outs to persons with life sentences. Accordingly, the decision to withdraw the directive essentially only returned Smith to the legally permissible position he previously occupied. And Smith cites only self-serving conjecture, not binding authority, to support his argument that the Board failed to follow mandatory procedures during the rescission process.

For example, Smith contends the letter withdrawing the directive was issued by a decision of the Board's chairperson alone. But there were two pertinent letters in the record. The first letter was addressed solely to Smith; that letter was signed by the chairperson but only generically states that – due to the Laurel Circuit Court's order – his serve-out was being reinstated and he would not receive parole consideration in ten years. There is no indication whatsoever in that letter that the withdrawal of the policy which would have permitted Smith to receive parole review in ten years was undertaken unilaterally by the chairperson.

The second, later letter was also signed by the chairperson but was not

addressed to Smith (or anyone else). That letter does, oddly, state that the chairperson had "exercise[d] her authority as Chair of the Board" to "rescind" the directive which afforded Smith parole consideration in ten years due to the Laurel Circuit Court's order.

There is no explanation in the record as to why the chairperson sent two letters. And we acknowledge that the second letter does refer to the chairperson having acted pursuant to the authority vested in her by virtue of the position she held. But there is no such statement in the first letter, which was the one directly addressed to Smith. And, as we have explained, the Board had the discretion to give Smith a serve-out, so the withdrawal of the directive did not place Smith in an impermissible parole status. In short, Smith has shown that he was understandably confused and upset, but he has not shown that the chairperson acted unilaterally to overcome a prior decision of the entire Board or that he has legally cognizable claims regarding the withdrawal of the policy which would have afforded him parole review in ten years.

Moreover, the reality is that the policy directive affording Smith parole review in ten years could not have been enforced due to the restraining order issued by the Laurel Circuit Court. So, even oddities in the explanation of the withdrawal would not entitle Smith to future parole review.

-10-

We understand Smith's confusion and frustration about the Board's whiplash-inducing "serve-out to reassessment in ten years to serve-out" treatment of his parole status, especially considering the two letters sent by the chairperson. However, Smith has not presented viable claims for relief based on the withdrawal of the directive which would have afforded him parole review in ten years, so the trial court did not abuse its discretion in denying his motion to amend his petition.

And, despite his efforts to do so, Smith has not sufficiently shown that he had a legally protected interest in the withdrawn directive. "Kentucky's [parole] statute[s] and the regulations promulgated pursuant thereto have not elevated parole to a liberty interest in which inmates have a legitimate claim of entitlement. In Kentucky, parole is a matter of legislative grace." *Belcher v. Kentucky Parole Bd.*, 917 S.W.2d 584, 587 (Ky. App. 1996).

We also discern no merit in Smith's arguments regarding his contention that the regulations governing the Board's parole decisions are contrary to various statutes. Unlike his treatment of other issues, Smith's brief does not show where, and how, he preserved these arguments for our review. *See* RAP 32(A)(4). Even laying that significant defect aside, Smith is not entitled to relief.

Smith contends the Board has not considered the results of inmates' risk and needs assessments, as required by KRS 439.335(1) and 439.340(2).[5] But the relevant policies enacted by the Board facially require it to consider a risk and needs assessment pursuant to those same statutes. *See* Kentucky Parole Board Policies and Procedures (KPBPP) 10-01(K)(1) ("Each Board member on a hearing panel shall review the results of the risk and needs assessment prepared by the Board's staff or by the Department of Corrections pursuant to KRS 439.335 and 439.340(1) before the hearing for the offender.").[6] KPBPP 10-01 was adopted into Kentucky's binding administrative regulation. *See* 501 KAR 1:080, § 1. In sum, Smith has cited to no binding authority to show that any relevant KPBPP conflicts with, or fails to comply with, any applicable statute, nor has he shown that the Board failed to consider any risk assessment(s) when it denied him parole.

And, moreover, risk assessments are only one factor among many which the Board may use to make parole decisions. Regardless of what Smith perceives to be his favorable risk assessment scores, "[d]enial of parole is an

---

[5] KRS 439.335(1) provides in relevant part that "[i]n considering the granting of parole and the terms of parole, the parole board shall use the results from an inmate's validated risk and needs assessment . . . ." KRS 439.340(2) similarly states that "[b]efore granting the parole of any prisoner, the board shall consider the pertinent information regarding the prisoner, including the results of his or her most recent risk and needs assessment . . . ."

[6] KPBPP 10-01 may be viewed at https://justice.ky.gov/Boards-Commissions/paroleboard/ Documents/Old%20Site/Statutes%20and%20Regulations/KYPB%2010- 01%20ParoleReleaseHearings%20eff%2012-4-15.pdf (last visited Jan. 25, 2023).

administrative function and this Court cannot probe the mind of the Board in order to determine the sufficiency of the reasons." *Stewart v. Commonwealth*, 153 S.W.3d 789, 791 (Ky. 2005). The trial court properly granted summary judgment to the Board on Smith's risk assessment-based claims.

For the foregoing reasons, the Franklin Circuit Court is affirmed.

JONES, JUDGE, CONCURS IN RESULT ONLY.

KAREM, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Brian Smith, *pro se*
Wheelwright, Kentucky

BRIEF FOR APPELLEES:

Angela T. Dunham
Frankfort, Kentucky